IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02288-KLM

GERALD L. BUMGARNER,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court[1] on the **Social Security Administrative Record** [#12],[2] filed October 11, 2019, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Andrew Saul, Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq.  On November 25, 2019, Plaintiff filed an Opening Brief [#16] (the "Brief").  Defendant filed a Response [#19] in opposition, and Plaintiff filed a Reply [#20].  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  The Court has reviewed the entire case file and the applicable law and is sufficiently advised

---

[1]  The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See* [#14, #21].

[2]  "[#12]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

in the premises.  For the reasons set forth below, the decision of the Commissioner is **REVERSED and REMANDED**.

## I.  Background

Plaintiff alleges that he became disabled at the age of forty on May 16, 2012.  Tr. 43, 268.[3]  On July 9, 2013, Plaintiff filed an application for disability insurance benefits under Title II.  Tr. 270.  On July 24, 2018, an Administrative Law Judge (the "ALJ") issued an unfavorable decision.  Tr. 270.

The ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2014.  Tr. 260.  The ALJ found that Plaintiff suffers from the following severe impairment: "regional sympathetic dystrophy of the right ankle and lower extremity venous insufficiency."  Tr. 260.  However, the ALJ also found that Plaintiff's impairment did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  Tr. 261.  The ALJ next concluded that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> [T]he claimant can only occasionally squat.  He cannot climb ladders or scaffolds.  He cannot use foot or leg controls.  He is unable to work in hazardous work areas.  He is unable to work in temperature extremes.  He requires an assistive device to ambulate.

Tr. 262.  Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform no past relevant work, but that he was able to perform the representative occupations of final assembler, bonder operator, and touch up

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 12-2 through 12-13 by the sequential transcript numbers instead of the separate docket numbers.

screener.  Tr. 268-69.  He therefore found Plaintiff not disabled at step five of the sequential

evaluation.    Tr. 269.    The ALJ's decision has become the final decision of the

Commissioner for purposes of judicial review.  20 C.F.R. § 404.981.

## II.  Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance
> benefits and Supplemental Security Income to persons who have a
> "disability." A person qualifies as disabled, and thereby eligible for such
> benefits, "only if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any other
> kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B)).  Under the applicable legal standard, a claimant is disabled if he or she

is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment . . . which has lasted or can be expected to last

for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(a); *see also*

*Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)).  The

existence of a qualifying disabling impairment must be demonstrated by "medically

acceptable clinical and laboratory diagnostic" findings.    42 U.S.C. §§ 423(d)(3),

423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act]

requires the [Commissioner] to consider the combined effects of the impairments in making

a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987)

(citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or

combination of impairments does not require a finding that an individual is disabled within

the meaning of the Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).  However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000)).  In other words, the Court does not reexamine the issues de novo.  *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*"  *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

## A.    Legal Standard

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits.  *See* 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a

subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d

1080, 1084 (10th Cir. 2007).  A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole."  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Further, evidence is not substantial if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  Analysis

Plaintiff makes four arguments in support of his assertion that the ALJ committed reversible error.  First, Plaintiff argues that the ALJ "failed to evaluate the medical evidence and medical source opinions as required by 20 C.F.R. § 404.1527."  *Brief* [#16] at 13.  Second, Plaintiff argues that the ALJ "failed to make adequate findings at step three because he failed to follow the Commissioner's policies regarding medical equivalence, and failed to consider [Plaintiff's] medically determinable impairments."  *Id.* at 19.  Third, Plaintiff argues that the ALJ "failed to perform a proper pain analysis."  *Id.* at 23.  Finally, Plaintiff argues that the ALJ "failed to meet the Commissioner's step five burden."  *Id.* at 25.  The Court begins by addressing Plaintiff's arguments at step three of the ALJ's analysis.

### A.    Step Three

Plaintiff argues that the ALJ "failed to make adequate findings at step three because he failed to follow the Commissioner's policies regarding medical equivalence, and failed to consider [Plaintiff's] medically determinable impairments."  *Brief* [#16] at 19.  Specifically,

Plaintiff takes issue with the fact that the ALJ "did not mention [Plaintiff's] obesity or BMI [i.e., Body Mass Index] anywhere in the decision.  Ergo, the ALJ's decision does not show that he considered all of [Plaintiff's] medically determinable impairments, and the combined effect of those impairments."  *Id.* at 20.

Pursuant to Social Security Ruling ("SSR") 02–1p,[4] the Commissioner "*will* consider obesity in determining whether . . . [t]he individual's impairment(s) meets or equals the requirements of a listed impairment in the listings."  SSR 02–1p, 2002 WL 34686281, at *3 (Sept. 12, 2002) (emphasis added).  SSR 02–1p defines a BMI of 30.0 and above as "obesity."  *Id.* at *2.  Plaintiff points to evidence in the medical record which suggests that Plaintiff's BMI was at or above this threshold.  *Brief* [#16] at 20 (citing Tr. 245, 413, 416, 419, 426, 429-31 (providing BMI data ranging from 30.10 to 32.93 at six times between February 16, 2015, and May 5, 2017).[5]  The ALJ did not, however, mention Plaintiff's obesity in his step three analysis.  Tr. 261-62.

Defendant concedes that the ALJ "should have discussed Plaintiff's weight in his decision, certainly," but asserts that the error was harmless.  *Response* [#19] at 9.  Plaintiff argues that the error was not harmless because the ALJ "could not have considered the combined effects of all of [Plaintiff's] medically determinable impairments at step three since the ALJ completely failed to address [Plaintiff's] obesity," and because "there was no

---

[4]  Plaintiff correctly notes that, "[e]ffective May 20, 2019, the Commissioner replaced SSR 02–1p with SSR 19–2p."  *Brief* [#16] at 20 n.8.  Although Plaintiff liberally cites to both rulings, the Court utilizes only the ruling in effect at the time of the ALJ's July 24, 2018 decision, which was SSR 02–1p.  *See* SSR 19–2p, 2019 WL 2374244, at *5 n.14 (May 20, 2019) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

[5]  Plaintiff also cites to Tr. 198 here, but that document is a form Privacy Act Statement.

medical opinion regarding medical equivalence." *Brief* [#16] at 21-22.

On its own, obesity is not one of the Listings, but a claimant with obesity equals the requirement of a Listing if he has another "impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-1p, 2002 WL 34686281, at *5. Here, Plaintiff does not argue that the ALJ should have considered any listing other than the two actually considered, i.e., Listing 1.02 and Listing 11.14. Tr. 261-62. As is relevant here, Listing 1.02 requires a showing that Plaintiff's impairments result in an "inability to ambulate effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. Similarly, Listing 11.14 requires, in part, "an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.14.

As mentioned above, the parties agree that the ALJ erred by failing to discuss obesity, so the only question is whether that error was harmless. Three issues arise here. First, the ALJ's findings at other steps "may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). However, there is no mention of Plaintiff's obesity at any other step in the ALJ's discussion and, therefore, the Court cannot find that the ALJ's findings elsewhere provide a proper basis for upholding his conclusion at step three. *See, e.g., R.T. v. Berryhill*, No. 18-4091-JWB, 2019 WL 632732, at *5 (D. Kan. Feb. 14, 2019) (holding that an ALJ's step four analysis regarding the claimant's obesity in connection with the claimant's physical impairments was insufficient to mandate a conclusion that the step three failure to discuss obesity was harmless where the ALJ failed to also discuss obesity in connection with the claimant's

-8-

mental impairments at step four).

Second, the ALJ stated that the inability to ambulate effectively under both Listing 1.02 and Listing 11.14 is defined as using two canes or two crutches or a walker.  Tr. 261. This conclusion may be correct with respect to Listing 11.14, under which a claimant must provide evidence that he is "unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes."  20  C.F.R. pt. 404, subpt. P, app. 1 § 11.00D2(b).  However, the ALJ's definition appears to be too narrow regarding Listing 1.02.  *See, e.g.*, *Nocchi v. Saul*, No. CV 20-101 CG, 2020 WL 5810482, at \*7 (D.N.M. Sept. 30, 2020) ("The Court notes, in any event, the use of only one cane does not, of itself, render a claimant able to ambulate effectively.").  Under Listing 1.02, a claimant can show an inability to ambulate effectively by showing, for example, "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail."  20  C.F.R. pt. 404, subpt. P, app. 1 § 1.00B2(b)(2).  Thus, under this regulation, the inability to ambulate effectively *may* be shown by the inability to walk without the use of a walker, two crutches, or two canes, but there are a number of other ways by which a claimant can meet or equal this requirement.  *See, e.g., Burrola v. Astrue*, No. 2:10-CV-770 GBW, 2011 WL 13289693, at \*5 (D.N.M. Aug. 5, 2011) ("Of course, [the] examples [in section 1.00B2b2] are not requirements of a finding of ineffective ambulation.  The touchstone is whether the person is capable of sustaining a reasonable walking pace over a sufficient distance to be able to

Case 1:19-cv-02288-KLM   Document 22   Filed 11/16/20   USDC Colorado   Page 10 of 19

carry out activities of daily living.") (internal quotations omitted)).  Thus, the ALJ appears

to have erred in the legal test he used to evaluate whether Plaintiff's impairments meet or

equal Listing 1.02.

Third, the absence of an opinion regarding medical equivalence in support of the

ALJ's opinion is fatal to a finding of harmless error.  Here, a state agency Single Decision

Maker ("SDM") determined at the initial level that Plaintiff's impairments did not meet or

equal the Listings, *see* Tr. 36-37, 39, but "the opinion of a SDM does not satisfy the

requirement that the finding of medical equivalence be supported by the opinion of a

physician or psychologist."  *Thomas v. Colvin*, 69 F. Supp. 3d 1174, 1178-79 (D. Colo.

2014) (resulting in a remand so that such an opinion could be obtained).  Thus, there is no

medical opinion in the record regarding whether Plaintiff's impairments, including obesity,

are equivalent to Listing 1.02.[6]

Accordingly, the Court finds that the ALJ committed reversible error at step three of

his analysis.

**B.      Physician Opinions**

Plaintiff argues that the ALJ "failed to evaluate the medical evidence and medical

source opinions as required by 20 C.F.R. § 404.1527."  *Brief* [#16] at 13.  Specifically, he

asserts that the ALJ erred by failing to give proper weight to the opinions of Oxlin Adams

("Adams") and Lori Moll ("Moll"), who both opined that Plaintiff would need to keep his leg

elevated throughout most of the day.  *Brief* [#16] at 13-19.  Specifically, Dr. Adams opined

on July 8, 2015, that Plaintiff is "unable to sit for [an] extended length of time without the

---

[6]  The Court notes that, even if the opinion of a SDM were sufficient, the SDM here only considered Listing 1.06 and Listing 11.14, not Listing 1.02.  Tr. 36.

need for elevation of the lower extremity due to the swelling." Tr. 247.  Dr. Moll opined on

March 26, 2018, that Plaintiff "requires that his leg is elevated most of the day due to

severe edema with chronic stasis dermatitis."  Tr. 490.

"Generally, a treating physician's opinion receives more weight than other

physicians' opinions since these sources are likely to be the medical professionals most

able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and

may bring a unique perspective to the medical evidence."  *Brownrigg v. Berryhill*, 688 F.

App'x 542, 548 (10th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation

marks and brackets omitted).  The evaluation of a treating physician's opinion requires "a

sequential two-step inquiry, each step of which is analytically distinct."  *Brownrigg*, 688 F.

App'x at 548 (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)).  "First, the

ALJ must consider whether the opinion is entitled to controlling weight."  *Brownrigg*, 688

F. App'x at 548.   This analysis requires findings that the physician's opinion is

"well-supported by medically acceptable clinical or laboratory diagnostic techniques and

consistent with other substantial evidence in the record."  *Id.* (quoting *Krauser*, 638 F.3d

at 1330) (internal quotation marks and brackets omitted).  "Second, if the opinion is not

entitled to controlling weight, the ALJ must make clear how much weight the opinion is

being given (including whether it is being rejected outright) and give good reasons, tied to

the factors specified in 20 C.F.R. §§ 404.1527 and 416.927 . . . for the weight assigned."

*Id.* (internal quotation marks, brackets, and footnote omitted).  Those factors are:

> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the
> treatment provided and the kind of examination or testing performed; (3) the
> degree to which the physician's opinion is supported by relevant evidence;
> (4) consistency between the opinion and the record as a whole; (5) whether

-11-

or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).  Although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Oldham*, 509 F.3d at 1258 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

> ### a.    Dr. Adams

Dr. Adams opined on July 8, 2015, that Plaintiff is "unable to sit for extended length of time without the need for elevation of the lower extremity due to the swelling."  Tr. 247. Regarding Dr. Adams's full opinion, the ALJ stated:

> There is a medical source opinion from the claimant's treating physician Oxlin Adams, completed in November 2014 indicating that due to the claimant's ankle condition, he must use an assistive device to ambulate.  Dr. Adams indicated that it was "unknown" how long the claimant could sit, stand, or walk in an eight-hour workday.  He indicated the claimant could lift up to ten pounds rarely and could never crouch, squat, climb ladders, and rarely climb stairs.  He confirmed that the claimant had no significant limitations in reaching, handling, and fingering.  He indicated that psychological factors plus pain would frequently interfere with attention and concentration and the claimant would frequently miss work.
>
> Dr. Adams also submitted a narrative letter completed in July 2015.  In this letter, Dr. Adams indicates that the claimant has pursued every reasonable treatment [and] is unable to sit for an extended period without the need for elevation of the lower extremity due to pain.  As a result, Dr. Adams recommended permanent disability.
>
> The opinions by Dr. Adams contradict each other.  His earlier opinion does not indicate limitations in sitting, standing, or walking and suggests he can lift 10 pounds at least rarely; yet his second opinion indicates that he cannot do any standing or walking for any prolonged period.  The treatment records

-12-

during this period do not show this degree of functional loss at that time. To the contrary, in visits in 2014, the claimant was described as walking independently without a cane. In his 2014 visit, no actual signs of joint instability were noted. Thus, the 2014 opinion is not entirely consistent with the evidence. In his later opinion, Dr. Adams said that the claimant pursued every treatment. Yet, as previously discussed, other doctors later noted that the claimant was not generally on board with treatment or had limited treatment as compared to his complaints even as recently as in 2017. This leads one to wonder whether these opinions were simply completed primarily taking into account the pain complaints and not based on the entirety of the objective findings. Considering these issues, the undersigned finds that these opinions are not entirely consistent with each other or with the other evidence of record. As such, they are granted limited weight.

There are listing level opinions from treating Nurse Campbell indicating that the claimant's condition meets listings 11.14 and 1.02. In 2018, Dr. Adams completed a similar form opinion as Nurse Campbell. However, he indicated that the claimant's condition did not medically meet listing 11.14, but was equivalent to listing 11.14. As discussed in finding number four, the undersigned does not find these opinions persuasive as there is no evidence to support the finding that the claimant is unable to ambulate effectively as defined in the listings (i.e., that the claimant uses two canes or two crutches or a walker). Instead, repeated references in the evidence reveal that since 2015, the claimant has been able to ambulate using a single cane. In light of this, the undersigned finds these opinions are not consistent with the evidence of record and grants them limited weight.

Tr. 266-67 (internal citations omitted).

The Court does not agree with the ALJ that Dr. Adams's opinions are not consistent with one another. As acknowledged by the ALJ, *see* Tr. 267, Dr. Adams stated in November 2014 that it was "unknown" how long Plaintiff could sit, stand, or walk in an eight-hour workday, *see* Tr. 231, and in July 2015 he stated that Plaintiff is "unable to stand or walk for any extended period of time," *see* Tr. 247. However, "unknown" is not the same as having an opinion that Plaintiff's abilities to sit, stand, or walk are all "unlimited" in an eight-hour day; rather, "unknown" appears to simply be short-hand for expressing no opinion at that time. Thus, the Court cannot find that there is a conflict between expressing

"no opinion" in November 2014 and later actually expressing an opinion in July 2015.

Relatedly, the ALJ's reasoning for discounting Dr. Adams's opinion on the basis that the medical record did not show a functional loss between 2014 and 2015 corresponding to the purported change in Dr. Adams's opinion does not withstand scrutiny, because there was no change in opinion with which to correspond. *See* Tr. 267. In other words, because Dr. Adams did not opine a difference in functional change between 2014 and 2015, as discussed above, the ALJ's observation that the medical evidence does not show a "corresponding" deterioration in Plaintiff's functional abilities is not an adequate reason to discount the physician's opinion.

Further, the ALJ's citations to purported inconsistency in the evidence are not sound. The ALJ cites to Tr. 226, which refers to a clinical visit by Plaintiff which occurred on June 12, 2013 (not in 2014 as stated by the ALJ in the opinion). Tr. 267. The ALJ states that "the claimant was described as walking independently without a cane," but there is no such statement to that effect here, or anything regarding whether Plaintiff was or was not using a cane or other ambulatory device. "The absence of evidence is not evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993). The ALJ also cites to Tr. 235, which refers to a clinical visit by Plaintiff which occurred on January 5, 2015 (again, not in 2014 as stated by the ALJ in the opinion). Tr. 267. Again, there is no discussion here regarding whether Plaintiff was using an ambulatory device or was walking independently. Tr. 235. Similarly, although the ALJ states that "no actual signs of joint instability were noted" at these two "2014" visits, other ankle issues were noted at both of these visits, including but not limited to an antalgic gait, tenderness, greatly increased pain with range of motion, and decreased range of motion in some directions. Tr. 226 (noting that Plaintiff "does seem

-14-

limited in his functional capabilities as a result of his foot and ankle"), 235 (noting that Plaintiff "exhibits difficulty walking").

The ALJ's final reason for granting Dr. Adams's opinion limited weight was that Dr. Adams stated that Plaintiff pursued every treatment, and that this was inconsistent with other physicians who had later noted that Plaintiff was "not generally on board with treatment or had limited treatment as compared to his complaints." Tr. 267 (citing Tr. 411 (statement by Nurse Karen Campbell, FNP-C, that Plaintiff "has not really been completely on board with some of the adjunct treatment approaches for the last few years"). Based on this, the ALJ speculated whether Dr. Adams's opinions were primarily based on Plaintiff's self-reported pain complaints as opposed to the entirety of the objective evidence. Tr. 267. However, at step two, the ALJ found that Plaintiff suffers from regional sympathetic dystrophy ("RSDS") of the right ankle. Tr. 260. This finding inherently requires "the presence of chronic pain and one or more clinically documented signs in the affected region." SSR 03–2p, 2003 WL 22399117, at *6 (Oct. 20, 2003). Thus, based on the ALJ's own finding, there must be "clinically documented signs" in the medical record on which Dr. Adams could have based his opinion. Further, it is unclear how Plaintiff's mere failure to follow all treatment approaches (while obviously engaging in others) is support for giving Dr. Adams's opinion limited weight. In the absence of further clarification here, the Court therefore cannot follow the ALJ's reasoning on this point. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163-64 (10th Cir. 2012) (stating that an ALJ's evaluation of a physician's opinion "is sufficient if it permits us to follow the adjudicator's reasoning" (internal quotation marks omitted)).

In short, the Court finds that the ALJ's stated reasons for giving only limited weight

to Dr. Adams's opinion, including the issue of whether Plaintiff needs to elevate his leg for

much of the day to relieve pain, are insufficient and must be revisited on remand.[7]

### b.    Dr. Moll

Dr. Moll opined on March 26, 2018, that Plaintiff "requires that his leg is elevated

most of the day due to severe edema with chronic stasis dermatitis." Tr. 490.  Regarding

Dr. Moll's full opinion, the ALJ stated:

> In March 2018, treating pain management physician Lori Moll, M.D.,
> completed a narrative medical source statement indicating that the claimant
> requires a cane to ambulate, but still has significant difficult ambulating
> prolonged distance.  He needs to elevate his leg due to severe edema and
> stasis dermatitis and should qualify for disability.  Dr. Moll was the claimant's
> treating doctor in 2017.  Her opinion that the claimant requires a cane to walk
> and has significant difficulty in walking prolonged distances has been granted
> considerable weight; however, the restrict [sic] to sedentary work with no
> more than occasionally squatting, no climbing as noted, and no foot controls
> takes into account this general opinion.  However, the undersigned finds the
> statement that the claimant needs to elevate his leg unsupported.  He was
> apparently able to sit in his appointments with Dr. Moll without elevating his
> leg.  Moreover, she did not routinely advise him to elevate his leg in her
> treatment plans with him.  Therefore, this portion of her opinion is granted
> lessor weight.  Finally, the general statement that the claimant should qualify
> for disability is an issue that is reserved to the Commissioner of the Social
> Security Administration and is not persuasive.

Tr. 267-68 (internal citations omitted).

The Court cannot find that either of the ALJ's reasons are adequate for giving "lessor

weight" to the portion of Dr. Moll's opinion concerning leg elevation.  The ALJ generally

relies on Exhibit 6/F (Tr. 400-471) in support.  The only notations the Court found in that

exhibit regarding leg positioning were on October 23, 2015, when it was noted that Plaintiff

---

[7]  To be clear, the Court does not find that the ALJ must give Dr. Adams's opinion more
weight on remand.  Rather, the ALJ may give the opinion more weight, but if not then he must
provide adequate reasoning to support his decision to give only limited weight to the opinion.

"holds his right leg extended out in front of his [sic] most of the time," and on December 1, 2015, December 29, 2015, and March 18, 2016, when it was noted that he "[h]olds his leg out straight in front of his chair when seated."   Tr. 435, 438, 441, 445.   In light of this evidence, and in light of a lack of any other evidence to the contrary, the Court cannot find that Plaintiffs' apparent ability "to sit in his appointments with Dr. Moll without elevating his leg" is no more than a scintilla of evidence to support a finding that Plaintiff retained the functional ability to work for eight hours without elevating his leg.  *Lax*, 489 F.3d at 1084 (stating that substantial evidence "requires more than a scintilla, but less than a preponderance").

The ALJ also gave "lessor weight" to Dr. Moll's opinion regarding leg elevation because "she did not routinely advise him to elevate his leg in her treatment plans with him." Tr. 268.  When Plaintiff first came to Spanish Peaks Regional Health and Dr. Moll, he made comments indicative of having been previously told he needed to "rest and keep his leg elevated '12 hours a day,'" although he also stated that this was difficult to do for this length of time because he had to be available to help with his children during the day. Tr. 445.  "[T]he fact that elevating one's leg is a remedy to help with swelling certainly seems to be common knowledge." *Kitzke v. Astrue*, No. 07-cv-01345-WYD, 2008 WL 4079297, at *5 (D. Colo. Aug. 21, 2008) (citing http://www.wcyh.org.uk/diseases/diseases/leg-swelling;  http://www.ehow.com/how_2070388_reduce-leg-swelling.html).  From this, "[i]t could be inferred that Plaintiff did not require repeated reminders to elevate [his] ankle . . . ." *Kitzke*, 2008 WL 4079297, at *5. This is especially true because Plaintiff's prior physician, Dr. Adams, had also independently opined nearly three years earlier that Plaintiff needed to keep his leg

-17-

elevated for significant portions of the day.  Tr. 247.  There is no indication before the Court

that any physician explicitly stated the opposite or otherwise cast doubt on this swelling and

pain management practice, and so there appears to be no conflict of medical opinion on

this point.  To the extent the ALJ did not believe that Plaintiff had a need to elevate his leg

most of the time throughout every day, simply because that information was not otherwise

overtly expressed in the clinical visit reports, the Court finds that the ALJ had an obligation

to contact these physicians to clarify that point.  *See Robinson v. Barnhart*, 366 F.3d 1078,

1084 (10th Cir. 2004) ("If evidence from the claimant's treating doctor is inadequate to

determine if the claimant is disabled, an ALJ is required to recontact a medical source,

including a treating physician, to determine if additional needed information is readily

available.") (citing 20 CFR §§ 404.1512(e)(1)).

In short, the Court finds that the ALJ's stated reasons for giving only limited weight

to Dr. Moll's opinion regarding whether Plaintiff needs to elevate his leg for much of the day

are insufficient and must be revisited on remand.[8]

## IV.  Conclusion

For the foregoing reasons,[9]

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not

---

[8]  Again, to be clear, the Court does not find that the ALJ must give Dr. Moll's opinion regarding leg elevation more weight on remand.  Rather, the ALJ may give the opinion more weight, but if not then he must provide adequate reasoning to support his decision to give only "lessor weight" to the opinion.

[9]  Given the Court's holdings regarding Plaintiff's obesity and the opinions of Dr. Adams and Dr. Moll, and the likely impact these holdings will have on the ALJ's pain analysis at step four and on the step-five determination upon remand, the Court need not address Plaintiff's other arguments at this time.  *See, e.g., Wignall v. Colvin*, No. 14-cv-03327-KLM, 2016 WL 1253623, at *8 n.6 (D. Colo. Mar. 31, 2016).

disabled is **REVERSED and REMANDED** to the Commissioner for further proceedings consistent with this Order pursuant to sentence four in 42 U.S.C. § 405(g).[10]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** his costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1).  *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1153 (D. Colo. 2015).

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff and **close** this case.

BY THE COURT:

Dated:  November 16, 2020

Kristen L.  Mix
United States Magistrate Judge

---

[10]  The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits.  *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993).  By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled.  *See, e.g.*, *Knuutila v. Colvin*, 127 F. Supp. 3d 1146, 1152 n.5 (D. Colo. 2015).